DIX v. JAQUAY.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. LIFE ESTATE—WASTE—PERMANENT INJURY—RIGHTS OF LIFE TENANT.
    A life tenant is entitled to recover from a subtenant who has committed waste full indemnity for the injury to the premises, including not only his own loss, but the loss to the remainderman.

2. SAME—COMPLAINT—SUFFICIENCY.
    A complaint in an action by a life tenant against a subtenant for waste committed on the premises, which alleges injury to the freehold by cutting down and appropriating timber, and that the injury is to the full value of the timber, is sufficient to authorize a recovery for damages to the inheritance, as well as to the life use of the plaintiff, though alleging only that the plaintiff was injured in his use and interest in the premises.

3. SAME—STATUTE—CONSTRUCTION.
    A statute giving to remaindermen a right of action for any damages for waste to the inheritance does not take from the life tenant the right to recover therefor.

Appeal from Special Term, Madison County.

Action by Morgan Dix against Amos Jaquay. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Cookinham, Sherman & Martin (Richard R. Martin, of counsel), for appellant.

E. W. Cushman, for respondent.

SMITH, J. A single question is presented by this appeal: Can a life tenant recover of a subtenant, who has committed waste upon the premises, full indemnity for the injury to the premises, including not only his own loss, but the loss to the remainderman? The plaintiff is a life tenant of the premises upon which the waste was committed. It does not appear to whom the property goes after his death. The defendant committed waste, which has been held by the referee to have been no injury to the estate of the life tenant, but to have injured the estate of the remainderman to the extent of $75. For this damage, however, the referee has held the defendant liable to the remainderman, and not liable to the plaintiff. Of this holding the plaintiff complains, contending that by the wrongful act of the defendant he has

been made absolutely liable to the remainderman for the damage caused by the defendant's waste. To the extent of this liability the plaintiff insists that he may recover, both for his own protection and as trustee for the remainderman.

That a life tenant is liable to a remainderman for a waste committed by a stranger is not questioned by the counsel for the defendant. The rule seems to be clearly stated in Cook v. Champlain Transp. Co., 1 Denio, 104. The opinion in part reads:

"I pass by the first ground stated, for the last seems decisive of the question. The plaintiffs claim that the mill was destroyed by the wrongful act of the defendants; and, if so, it was waste, for which the plaintiffs, being tenants for years, were responsible. 'It is common learning,' said Heath, J., in Attersoll v. Stevens, 1 Taunt. 198, 'that every lessee of land, whether for life or for years, is liable, in an action of waste to his lessor, for all waste done on the land in lease, by whomsoever it may be committed.' Chambre, J., in the same case, at page 196, said: 'The situation of the tenant is extremely analogous to that of a common carrier. To prevent collusion (and not on the presumption of actual collusion), both are charged with the protection of the property intrusted to them against all but the acts of God and the King's enemies; and as the tenant in the one case is charged with the actual commission of the waste done by others, so in the other case the carrier is charged with actual default and negligence, though he loses the goods by a force that was irresistible, or by fraud, against which no ordinary degree of care could have protected him.' Lord Coke is not less explicit, for he says: 'Tenant by the curtesy, tenant in dower, tenant for life, years, etc., shall answer for the waste done by a stranger, and shall take their remedy over.' 1 Inst. 54a. See, also, 2 Id. 145, 303; 1 Chit. Gen. Pr. 388; 4 Kent's Com. 77; 2 Rev. St. [1st Ed.] p. 334 [part 3, c. 5, tit. 5] § 1; 1 Inst. 57a, note 377; 2 Roll. Abr. 821; 3 Black. Com. 228; Comyn's Land. and Ten. 188."

In Baker v. Hart, 123 N. Y. 473, 25 N. E. 949, 12 L. R. A. 60, Judge Finch, writing for the court, says:

"But it is sought to be sustained on another ground. The doctrine is invoked that a tenant for life or for years is bound to answer to the owner for any waste committed, even though it be the act of a stranger. Such is undoubtedly the rule. Cook v. Champlain Transportation Co., 1 Denio, 101, 104."

The learned referee, however, admitting the liability of the life tenant, declines to recognize his right of action upon the ground that he has not been damaged until called upon by the remainderman to satisfy that liability. This ruling he bases mainly upon the authority of Wood v. Griffin, 46 N. H. 230. The same doctrine is also held by one of the Circuit Judges of the United States in California Dry Dock Company v. Armstrong (C. C.) 17 Fed. 216, which decision follows the New Hampshire authority.

With this holding of the referee we are not inclined to agree. There are strong reasons for giving this right of action to the life tenant. With this absolute liability to make good to the remainderman waste committed even by a stranger, the remainderman may trust to his liability, and reserve his action until at any time within the statute of limitations. The remainder may be to an infant, and even to one not in being at the time of the commission of the waste. The remainder may be a contingent one, so that it may not be known who will have the ultimate estate. By section 1665 of the Code of Civil Procedure, "a person seised of an estate in remainder or reversion may maintain

an action founded upon an injury done to the inheritance, notwithstanding any intervening estate for life or for years." A contingent remainderman can hardly be said to be seised of an estate in remainder. In such case, to whom would the wrongdoer respond? He is either liable to the life tenant for the waste committed, or he is liable to no one; and the life tenant, with a certain ultimate liability to the remainderman, whosoever he shall prove to be, is absolutely without recourse or indemnity for the liability imposed upon him by the wrongful act of the defendant. If the life tenant must wait for an action by the remainderman to determine his liability, his recourse against the wrongdoer must in many cases become ineffective by the delay.

Nor can he perfect his right of action by satisfying the damages to the inheritance and then suing. The damages are unliquidated. Any amount which he pays in satisfaction must be paid at his peril, with his chance of establishing such amount as the damage done in an action against the wrongdoer. If the remainder is contingent, to whom shall he make satisfaction of the liability? In such case I am unable to conceive of any satisfaction of that liability which would be binding if perchance another became entitled to the remainder upon the happening or not of the contingency named. It will thus be seen that, if the judgment below be well rendered, a life tenant at the best is subjected to a dangerous hazard in being compelled to make satisfaction of an unliquidated claim to a remainderman upon his chance of being able to establish that claim in full as damage in his action against the wrongdoer. At the worst the wrongdoer has burdened the life tenant with an absolute liability to one who, upon the happening of a contingency, shall thereafter become the remainderman without liability to the life tenant, and only with a remote liability to the person who shall, upon the contingency thereafter, become seised with the remainder. If these premises be sound, the conclusion is irresistible that the wrongdoer must answer to the life tenant for the full damage done both to his life estate and to the inheritance, and the damage to the inheritance recovered by the life tenant is held by him as trustee for the remainderman.

Other grounds might be urged upon which could be rested the liability of the wrongdoer to the life tenant for the injury to the inheritance. If, perchance, a building be burned by the negligence or wrong of a stranger, the life tenant is entitled to the moneys with which to rebuild that building that he may have the life use thereof. Even if a recovery for such an injury should be had by the remainderman, it is not clear that the court would not require the remainderman to rebuild the building with the proceeds of such recovery that the life use given by the deed be not restricted. Again, one who has wrongfully imposed a liability upon a life tenant to make good to a remainderman, should rightfully be required to provide him with the means whereby that liability could be satisfied. A life tenant thus injured should not first be required to satisfy the liability, and take his chance of reimbursement from the wrongdoer. It cannot matter to the wrongdoer to whom he pays, if only he be not required to pay twice; and it will appear by the rulings in analogous cases hereafter cited that a recovery

of the wrongdoer by the life tenant is a bar to a recovery by the remainderman.

This conclusion is, we think, conclusively established in this state. In Cook v. Champlain Transportation Company, supra, this rule of law was specifically held. In Austin v. H. R. R. R. Co., 25 N. Y. 334, it was again held, and there is no case in this state questioning these authorities. They are brushed aside by the learned referee upon the ground that the question was not there raised that the life tenant could not sue before satisfying his liability to the remainderman. Whether or not this question was discussed it was directly involved, and the authority must control our decision, unless it be very clear that some principle of law was not called to the attention of the court, which, without substantial doubt, must lead to a different conclusion. We are not aware of any such principle of law which clearly antagonizes the conclusion reached in those cases. On the contrary, in analogous cases are found the statement of legal principles which are fully in accord therewith. As stated in the quotation above from the case of Cook v. Champlain Transportation Co., the ground of liability of the tenant to the remainderman is analogous to the ground of liability of a common carrier to a consignor. In that case, although the consignor would have a right of action against a wrongdoer for trespass upon the goods, or for injury thereto, it is settled law that a common carrier may recover for the full damage done. See Merrick v. Brainard, 38 Barb. 574. And even where the liability is not so strict, as in the case of a bailment, the bailee, liable only for ordinary or slight negligence, may recover from a wrongdoer, in case of conversion, the full value of the goods taken. In Sutherland on Damages (3d Ed.) § 918, it is said:

"The English Court of Appeal has recently dealt with the question of the extent of recovery by a bailee who was under no liability to his bailor for the loss of the property in question. The case arose out of a collision between two vessels, which resulted in the loss of a portion of the mails carried by one of them. The claim was made by the Postmaster General on behalf of himself and the Postmasters General of Cape Colony and Natal to recover out of the sums paid into court on behalf of the vessel at fault the value of letters, parcels, etc., in his custody as bailee, and so lost. The court took the position that possession is good against a wrongdoer, and that the latter cannot set up the jus tertii unless he claims under it. That is established by a long series of actions of trover and trespass at the suit of the possessor. 'And the principle being the same, it follows that he can equally recover the loss of the goods in an action on the case for their loss through the tortious conduct of the defendant. I think it involves this also: that the wrongdoer who is not defending under the title of the bailor is quite unconcerned with what the rights are between the bailor and the bailee, and must treat the possessor as the owner of the goods for all purposes, quite irrespective of the rights and obligations as between himself and the bailor.' "

Notwithstanding this right of action by the bailee for the full value of the goods, the bailor also has a right of action for any permanent injury done to the chattel. See Cyclopædia Law and Procedure, vol. 5, p. 221, and numerous cases cited under note 2. But a recovery by the bailee of the full value of the property or of the full injury done is a complete bar to an action by the bailor for the same damage. Woodman v. Nottingham, 49 N. H. 387, 6 Am. Rep. 526. An analogous rule is held in the case of a promissory note. The indorser, after part payment, may sue the maker for the moneys paid upon the note.

Nevertheless, the payee has still a right of action against the maker, and may recover the full amount of the note, in which case the recovery to the amount of the moneys paid by the indorser will be held as trustee for the indorser, and a recovery will bar an action by the indorser against the maker for the moneys paid. Madison Square Bank v. Pierce, 137 N. Y. 444, 33 N. E. 557, 20 L. R. A. 335, 33 Am. St. Rep. 751. Again, in actions for negligence it is settled law that liabilities incurred by reason of the negligence may be recovered, although not paid. In McNaier v. Manhatten Railroad Company (Sup.) 4 N. Y. Supp. 310, it is held:

"The plaintiff having averred that he was put to expense for surgical treatment, it is not error to allow the surgeon to testify to the value of his services. It is not necessary that the amount shall have been actually paid."

This case was affirmed on appeal in 123 N. Y. 664, 26 N. E. 750. In Reynolds v. City of Niagara Falls, 81 Hun, 353, 30 N. Y. Supp. 954, it was held that liability for expenses incurred by plaintiff for medical treatment was properly included in the damages, though not paid. See, also, Coal Company v. Scheiber, 65 Ill. App. 304; Vergin v. Saginaw, 125 Mich. 499, 84 N. W. 1075. It will thus be seen that the law allows recoveries for liabilities incurred, although not paid, and even against a defendant liable to another party for the same damage. There can, therefore, be no legal objection to this recovery by reason of the fact that the liability of the life tenant to the remainderman has not been satisfied. There are cases of contract liability, as in cases of suretyship, where a party made liable by the act of the defendant can only recover after having paid that liability. I know of no such case, however, where the liability caused by the defendant's act had arisen out of a tort, or where such liability is unliquidated. It is only in case of a liquidated liability that the party made liable can with safety pay the liability, and then sue to recover from the party whose act has created the liability. To hold such a rule in the case at bar would place the life tenant in unjust hazard, to which rule we are not driven by any legal principle or by any controlling authority.

But it is objected by the defendant that the dismissal of the complaint should be sustained, as it is claimed that the only damages asked for in the complaint are the damages to the plaintiff's life estate. The record before us presents none of the proceedings upon the trial. In the findings of the referee the injury to the freehold is distinctly found, and the conclusion of law that as life tenant he cannot recover for damages to the inheritance. The whole matter was apparently submitted to the referee for his determination, and, whatever might be the technical construction of the complaint, the judgment entered would clearly be a bar to another action brought to recover for injury to the inheritance. By reference to the complaint, however, we think that enough is there alleged to authorize the determination of this question. The injury to the freehold is clearly alleged, and the act of cutting down and appropriating hemlock and hardwood; and, while the allegation is that by reason of such acts the plaintiff was injured "in his use and interest in the premises," it is stated that the injury is to the full value of the hemlock and hardwood cut down and appropriated, and for that amount judgment is asked. We think, therefore, the complaint alleged

sufficient to authorize a recovery for damages to the inheritance as well as to the life use of the plaintiff.

It is claimed that a life tenant is not given a right of action for any damages for waste by the statute, and had none at common law. It would seem a sufficient answer to this contention to cite the cases of Cook v. Transportation Co. and Austin v. H. R. R. R. Co., supra. The giving of the right of action to the remainderman took from the life tenant no responsibility, and in no way lessened his liability, and therefore took from him no rights of action which he theretofore possessed either for the purpose of compensating himself for the injury to his life estate, or for the purpose of indemnifying himself for his liability to the remainderman. For these reasons we think this judgment should be reversed, and a new trial granted.

Judgment reversed, referee discharged, and new trial granted, with costs to appellant to abide event. All concur; PARKER, P. J., in result.